J-A05002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INTEREST OF A.N.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.J.C. | : | |
| | : | No. 82 WDA 2016 |

Appeal from the Order Entered December 17, 2015
In the Court of Common Pleas of Indiana County
Orphans Court Division at No(s):  No. 32-02-0192

BEFORE:   GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MARCH 06, 2017**

Appellant, T.J.C. ("Mother"), appeals from the order, entered in the Indiana County Court of Common Pleas Orphans' Court, that removed Mother and M.J.C., Jr. ("Father") as co-guardians of their daughter, A.N.C. ("Daughter"), appointed Professional Elder Care Services, Inc. ("PECS") as Daughter's guardian, and authorized PECS to select Daughter's primary caregiver.  We affirm.

The relevant facts and procedural history of this care are as follows. Mother and Father are the natural parents of Daughter, who is severely and permanently physically and developmentally disabled, and who requires continuous care.  Daughter is the beneficiary of an irrevocable trust, the purpose of which is to maintain Daughter's well-being.  The trust owns the residence, where Daughter lives with Mother, Father, and her sister, M.A.C. Mother and Father have been Daughter's primary caregivers throughout her

life. After Daughter turned 18, Mother and Father filed a petition to adjudicate Daughter an incapacitated person and appoint a guardian. On May 27, 2014, the court adjudicated Daughter an incapacitated person and appointed Mother and Father as Daughter's plenary co-guardians.

On June 30, 2015, Father filed an emergency petition to remove Mother as co-guardian and exclude Mother from the residence. In his petition, Father alleged Mother had physically and verbally abused Daughter. In late June 2015 or early July 2015, Father filed a divorce complaint. Father also filed a protection from abuse ("PFA") petition on Daughter's behalf against Mother in early July 2015. Father subsequently withdrew the PFA petition after Mother agreed to remove herself from the residence. On July 15, 2015, Daughter's guardian *ad litem* also filed an emergency petition to temporarily remove Mother as co-guardian and exclude Mother from the residence until the court held a hearing.

On October 13, 2015, Mother filed an emergency petition to remove Father as co-guardian and exclude Father from the residence. Mother alleged Father had abused and neglected Daughter. By order dated October 15, 2015, the Orphans' Court appointed PECS as Daughter's temporary guardian and ordered Mother and Father to undergo psychological evaluations to assess their fitness to serve as Daughter's co-guardians. On October 23, 2015, the Orphans' Court appointed Dr. Carolyn Menta, a clinical psychologist, to conduct Mother's and Father's evaluations.

The Orphans' Court conducted a hearing on Mother's and Father's petitions on August 25, 2015, which continued on December 17, 2015. At the August 25th hearing, Daughter's guardian *ad litem* withdrew her emergency petition. During the hearing, the Orphans' Court heard testimony from a number of people, including: Mother; Father; Daughter's sister; Dr. Menta; LuAnn Caryl, a representative of Liberty Healthcare Services, Adult Protective Services; Mary Hagan, trust administrator; Dr. Judith Rein, Mother's treating psychologist; and Diana Reffner, a registered nurse employee of PECS.

By order dated December 17, 2015, the court removed both Mother and Father as Daughter's co-guardians, appointed PECS as Daughter's guardian, and authorized PECS to select Daughter's primary caregiver. Mother filed a timely notice of appeal on January 8, 2016. On January 11, 2016, the Orphans' Court ordered Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Mother timely complied on February 1, 2016.

Mother raises two issues for our review:

> DID THE COURT ABUSE ITS DISCRETION IN REMOVING [MOTHER] AS A CO-GUARDIAN OF THE PERSON OF [DAUGHTER] AS BEING IN THE BEST INTEREST OF [DAUGHTER] AFTER SPECIFICALLY FINDING THAT THERE HAD BEEN NO ABUSE, NEGLECT, OR BREACH OF DUTY ON THE PART OF [MOTHER]?
>
> DID THE COURT ABUSE ITS DISCRETION IN NOT REQUIRING [FATHER] OF [DAUGHTER] TO BE REMOVED FROM THE HOUSE WHERE [DAUGHTER] RESIDED AFTER

REMOVING…FATHER AS A CO-GUARDIAN ALONG WITH [MOTHER] THEREBY NEGATING THE PURPOSE FOR THE REMOVAL OF…FATHER OF [DAUGHTER] AS A CO-GUARDIAN?

(Mother's Brief at 5).

In her issues combined, Mother argues the court had no cause to remove her as a guardian of Daughter and failed to remove Father from the residence after removing him as co-guardian of Daughter. Mother claims she is not bipolar but suffers instead from situational mixed anxiety and depressive disorder. Nevertheless, she insists the court made up its mind that Mother was mounting a fight over the parents' divorce and equitable distribution instead of Daughter's best interests. Mother concludes the case should be remanded for a new hearing so she can introduce evidence that she is not bipolar and that her interest in caring for Daughter has nothing to do with equitable distribution; and for the court to explain why it removed Father as co-guardian but did not order him out of the residence. We disagree.

Appellate review of selection of a guardian is subject to an abuse of discretion standard. *In re Duran*, 769 A.2d 497 (Pa.Super. 2001). "Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Id.* at 506 (quoting *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 469, 756 A.2d

1116, 1123 (2000)).

In response to Mother's first issue the court directed our attention to Dr. Menta's testimony:

> With regard to [Mother], Dr. Menta testified that Mother was cooperative with the evaluation. Mother denied any abusive behavior toward [Daughter], and raised concerns about Father continuing to serve as guardian.
>
> Dr. Menta spoke with [Daughter's sister] as part of the evaluation, and [Daughter's sister] confirmed that Mother had been verbally aggressive toward [Daughter] and physically aggressive toward her. Dr. Menta also spoke with Dr. Judith Rein, who is [Mother]'s current therapist. Dr. Menta also considered information she received from prior treatment through the Community Guidance Center as well as the multiple reports of temper outbursts and moodiness.
>
> Dr. Menta completed her psychological testing on Mother. Dr. Menta administered the Minnesota Multiphasic Personality Inventory, which is a screening measure that is widely used to give a broad view of someone's psychological functioning as well as their personality and coping style, the child abuse potential in[ventory], which looks at traits that have been found to be consistent with individuals who perpetrate…physical child abuse, and the parent stress index, which is a measure of the parent's overall level of stress as well as the level of stress that they experience in relation to the child. Dr. Menta concluded that overall in putting together the information from the clinical interview and the psychological testing, my impression is that [Mother] is struggling with bipolar disorder that has not been treated.
>
> With regard to Mother's ability to serve as guardian for [Daughter], Dr. Menta made the following recommendation:
>
>> I would very strongly recommend that she see a psychiatrist and be put on medication to help moderate her mood. There is no doubt in my mind

> that [Mother] cares for [Daughter] and has had a good relationship with her much of the time, but with bipolar disorder comes a good deal of impulsivity, difficulty controlling and regulating one's mood, there can be irrational behavior, but with medication management on an ongoing basis, that can be very controlled, so that behavior can be much more consistent so once she is in treatment on a steady basis, it's quite possible that she could be fit to act as guardian, but if it goes untreated, I am not comfortable recommending her as guardian.

(Orphans' Court Opinion, filed February 11, 2016, at 4-6) (internal quotation marks and citations to record omitted). Here, Dr. Menta conducted a psychological evaluation of Mother. Daughter's sister confirmed that Mother had been verbally and physically aggressive toward Daughter. Dr. Menta consulted with Mother's current therapist, considered records of Mother's prior treatment at Community Guidance Center, and concluded Mother is struggling with untreated bipolar disorder. As a result, Dr. Menta strongly recommended that Mother see a psychiatrist and begin medication. Dr. Menta suggested Mother could possibly be a guardian for Daughter in the future if Mother received ongoing treatment and medication, but Dr. Menta was uncomfortable recommending Mother as a guardian for Daughter at the current time. Based on Dr. Menta's testimony, and given Daughter's severe and permanent limitations, which make it impossible for Daughter to protect herself from any act of verbal and/or physical aggression, the court removed Mother as guardian of Daughter's person. Given these circumstances, we see no reason to disturb the court's decision to remove Mother as a guardian

of Daughter.

In response to Mother's second issue the court stated:

> In closing, the [c]ourt notes that the second issue set forth in Mother's Concise Statement of the [Errors] Complained of on Appeal is telling, and it summarizes the [c]ourt's belief about Mother's position in this matter. The [c]ourt believes that Mother viewed the struggle over guardianship of [Daughter] as a struggle over the "equitable distribution" of the family residence. In other words, the parent who was allowed to remain as guardian of the person, would be permitted to stay in the residence owned by the trust created for [Daughter's] benefit. The [c]ourt refused to take property issues into consideration, but rather, stated that the best interest of [Daughter] is what is guiding this proceeding and the [c]ourt's decision in this matter.

(*Id.* at 7-8) (internal citations to record omitted). Importantly, by virtue of its December 17th order, the Orphans' Court did not either allow or forbid Mother or Father to continue to occupy the residence. Rather, the court authorized Daughter's newly-appointed guardian to act in Daughter's best interest and determine who should serve as Daughter's primary caregiver and manage Daughter's time with her family. Therefore, Mother's second claim fails. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/6/2017

- 7 -

IN THE COURT OF COMMON PLEAS OF INDIANA COUNTY, PENNSYLVANIA
ORPHAN'S COURT DIVISION

IN RE:    Interest of A. N. C.          , an    :
          Incapacitated Person.              :         NO. 32-02-0192


OPINION PURSUANT TO Pa.R.A.P. 1925(a)

AND NOW, this 11th day of February, 2016, the Court

submits this Opinion pursuant to Pa.R.C.P. 1925(a):

A. N. C.     / (hereinafter Daughter) is a 20 year old young

lady who suffers from severe and permanent disabilities that resulted

from trauma suffered during her birth.[1] Daughter is essentially non-verbal,

and cannot ambulate without assistance.

T. J. C.       is Daughter's mother (hereinafter "Mother") and

M. J. C.  Jr., is Daughter's father (hereinafter "Father").  Mother and

Father raised Daughter and served as her primary caregivers during her

childhood and young adult life, and shortly after Daughter's 18th birthday, a

---

[1] A medical malpractice action was filed on Nikki's behalf, and a sum of money was awarded to Nikki and placed into a trust for her benefit.

1

Petition to Adjudicate as an Incapacitated Person and Appoint Guardian was filed by Mother and Father. By Final Decree dated May 27, 2014, Daughter was adjudicated to be an incapacitated person, and Mother and Father were appointed as plenary guardians of the estate and person of Daughter.

Until approximately June of 2015, Mother, Father, and Daughter2 resided together as an intact family unit in a residence owned in the name of the trust created for Daughter's benefit. On June 30, 2015, Father filed an Emergency Petition to Remove Guardian, alleging therein that Mother had subjected Daughter to physical and verbal abuse, and requesting that Mother be removed as guardian and excluded from the family residence.

This Court denied the emergency request for relief, and scheduled a hearing to address the merits of the Petition. After several continuances, a hearing was held before this Court on December 17,

---

2 Daughter's sister, M. A. C. also resided in the family residence during much of Daughter's young life, but no longer lives in the family home.

2

2015. In addition to the Emergency Petition to Remove Guardian filed by Father, the Court also addressed the Emergency Petition to Remove Guardian filed by Mother on October 13, 2015.[3]

Section 5515 of the Decedents, Estates and Fiduciaries Code addresses the removal of a guardian, and in doing so, simply incorporates Section 3182 and Section 3183 of the Code. 20 Pa.C.S.A. Section 5515. See also In re Estate of Border, 68 A.3d 946 (Pa.Super. 2013). Section 3182 addresses the grounds for removal, and Section 3183 addresses the procedure for removal.

The Court believes that Section 3182(5) is particularly relevant in this matter; Section 3182(5) provides as follows:

Section 3182. Grounds for removal

---

[3] In addition to the emergency petitions filed by Father and Mother, a Petition for Emergency Relief was filed on July 15, 2015, by Sarah P. Ross, Esquire, court-appointed counsel for Daughter however, this Petition was subsequently withdrawn by oral motion of Attorney Ross. The relief requested in the Petition for Emergency Relief filed by Daughters counsel included removing Mother as co-guardian until a hearing on the matter, prohibiting Mother from occupying the family residence owned by the trust, and prohibiting Mother from removing Daughter from the

The court shall have exclusive power to remove a personal representative when he:

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

Dr. Carolyn Menta, a clinical psychologist, was directed by Order of Court to conduct a psychological evaluation on Mother, and Father to determine fitness to serve as a guardian for Daughter. Dr. Menta testified at the hearing held on December 17, 2015.

With regard to Mother, Dr. Menta testified that Mother was cooperative with the evaluation. (Hearing Transcript, p. 10). Mother denied any abusive behavior toward Daughter and raised concerns about Father continuing to serve as guardian. Id.

Dr. Menta spoke with M.A.C., Nikki's sister, as part of the evaluation, and M.A.C. confirmed that Mother "had been verbally aggressive toward Daughter and physically aggressive toward her."

residence. The Court denied the emergency relief, and scheduled a hearing on the merits of the Petition, however as stated above, the Petition was withdrawn by oral motion.

4

(Hearing Transcript, p. 12). Dr. Menta also spoke with Dr. Judith Rein "who is Mother's current therapist." Id. Dr. Menta also considered information that she received "from prior treatment through the Community Guidance Center as well as the multiple reports of temper outbursts and moodiness." (Hearing Transcript, p. 13).

Dr. Menta completed psychological testing on Mother; Dr. Menta administered the Minnesota Multiphasic Personality Inventory, "which is a screening measure that is widely used" to give a "broad view of someone's psychological functioning as well as their personality and coping style," the child abuse potential indicator, which "looks at traits that have been found to be consistent with individuals who perpetrate.....physical child abuse," and the parent stress index, "which is a measure of the parent's overall level of stress as well as the level of stress that they experience in relation to the child." (Hearing Transcript, pgs. 8, 9, and 12). Dr. Menta concluded that "[o]verall in putting together the information from the clinical interview, and the psychological testing,

5

my impression is that *Mother* is struggling with bipolar disorder that has not been treated." (Hearing Transcript, p. 13).

With regard to Mother's ability to serve as guardian for *Daughter,* Dr. Menta made the following recommendation:

"I would strongly recommend that she see a psychiatrist and be put on medication to help moderate her mood. There is no doubt in my mind that *Mother* cares for her daughter and has had a good relationship with her much of the time, but with bipolar disorder comes a good deal of impulsivity, difficulty controlling and regulating one's mood, there can be irrational behavior, but with medication management on an ongoing basis, that can be very controlled, so that behavior can be much more consistent so once she is in treatment on a steady basis, it's quite possible that she could be fit to act as guardian, but if it goes untreated, I am not comfortable recommending her as guardian." (Hearing Transcript, p. 15).

6

On the basis of this testimony, and given Daughter's severe and permanent limitations that make it impossible for her to protect herself from any act of verbal and/or physical aggression, this Court granted Father's Petition to Remove Guardian, and entered an order removing Mother as the guardian of the person.[4]

In closing, the Court notes that the second issue set forth in Mother's Concise Statement of the Matters Complained of on Appeal is telling, and it summarizes the Court's belief about Mother's position in this matter. The Court believes that Mother viewed the struggle over guardianship of the person as a struggle over the "equitable distribution" of the family residence. In other words, the parent who was allowed to remain as guardian of the person, would be permitted to stay in the residence owned by the trust created for Daughter's benefit. The Court refused to take property issues into consideration, but rather, stated that

---

[4] The Court notes that Mother's Petition to Remove Guardian also was granted, and the Court removed Father ., as guardian of the person. An independent, third party entity was appointed as guardian of the person for Daughter.

7

"the best interest of Daughter is what is guiding this proceeding and the Court's decision in this matter." (Hearing Transcript, p. 180).

BY THE COURT:

Thomas M. Bianco, Judge

I hereby CERTIFY that this document is recorded in the Clerk of the Orphans' Court Office of Indiana County, Pennsylvania



Patricia Streams-Warman

Patricia Streams-Warman
Clerk of the Orphans' Court

8